UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

A‍SSOCIATION OF AMERICAN R‍AILROADS,

    Plaintiff,

        v.

B‍OB J‍ACOBSON,
  *Commissioner of the Minnesota Department of Public Safety*, and

P‍AUL M‍ARQUART,
  *Commissioner of the Minnesota Department of Revenue*

in their official capacities,

    Defendants.

Case No. 0:24-cv-01522-KMM/SGE

**ASSOCIATION OF AMERICAN RAILROADS' AND THIRD-PARTY DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE STATE'S MOTION TO MODIFY PRETRIAL SCHEDULING ORDER**

B‍OB J‍ACOBSON,
  *Commissioner of the Minnesota Department of Public Safety*,

    Plaintiff,

        v.

BNSF R‍AILWAY C‍OMPANY, W‍ISCONSIN C‍ENTRAL L‍TD., C‍EDAR R‍IVER R‍AILROAD C‍OMPANY, S‍OO L‍INE R‍AILROAD C‍OMPANY, AND U‍NION P‍ACIFIC R‍AILROAD,

    Third-Party Defendants.

## TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 1

ARGUMENT .......... 6

The State Cannot Demonstrate Good Cause To Modify The Scheduling Order .......... 6

A. The State Cannot Show Diligence. .......... 6

B. The State Cannot Demonstrate Any Particularized Need For Additional Discovery. .......... 9

C. The State's Requested Modifications To The Scheduling Order Would Prejudice AAR And The Railroads. .......... 10

D. The State's Responses Fall Flat. .......... 12

CONCLUSION .......... 14

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*,
   187 F.R.D. 578 (D. Minn. 1999) ................................................................. 6, 7, 8, 9, 10

*Bradford v. DANA Corp.*,
   249 F.3d 807 (8th Cir. 2001) ..................................................................................... 8, 11

*Fagen, Inc. v. Exergy Dev. Grp. of Idaho, L.L.C.*,
   2016 WL 2885958 (D. Minn. May 17, 2016) ............................................................... 11

*Fair Isaac Corp. v. Fed. Ins. Co.*,
   2022 WL 1537957 (D. Minn. May 16, 2022) ............................................................... 13

*Freeman v. Busch*,
   349 F.3d 582 (8th Cir. 2003) ..................................................................................... 7, 8

*Fuller v. Hafoka*,
   2020 WL 4875457 (D. Minn. Aug. 19, 2020) ................................................................ 9

*Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*,
   2008 WL 11349956 (D. Minn. Nov. 7, 2008) ................................................................ 6

*Johnson v. Wells Fargo Bank, N.A.*,
   2012 WL 6015551 (D. Minn. Dec. 3, 2012) .................................................................. 6

*Petrone v. Werner Enters., Inc.*,
   940 F.3d 425 (8th Cir. 2019) ........................................................................................ 7

*Restoration Builders, Inc. v. Vining*,
   2024 WL 5233148 (D. Minn. Dec. 27, 2024) ............................................................. 7, 8

*Sherman v. Winco Fireworks, Inc.*,
   532 F.3d 709 (8th Cir. 2008) ................................................................................ 6, 7, 9

*Sorin Grp. USA, Inc. v. St. Jude Med. S.C., Inc.*,
   2016 WL 11783760 (D. Minn. Nov. 2, 2016) ......................................................... 10, 11

*Walker v. Barnett*,
   484 F. Supp. 3d 683 (D.S.D. 2020) ............................................................................. 10

**Rules**

Fed. R. Civ. P. 16 .......................................................................................... 2, 6, 7, 11, 13

Local Rule 16.3 ............................................................................................................ 2, 6

## INTRODUCTION

One business day before the close of fact discovery, the State moved to modify the Pretrial Scheduling Order. The State fails to establish good cause for that belated request or to justify its failure to comply with the Court's unequivocal instruction that fact discovery must be "commenced in time to be completed on or before September 1, 2025." Dkt. 80 ¶ 1b (emphasis in original). Indeed, given the State's delay, this Court will not have an opportunity even to hear argument on the State's motion until over a month after the close of fact discovery and nearly a week after the parties have submitted their expert reports. At that late juncture, there can be no sound basis to reopen fact discovery and require the parties to redo and resubmit their expert reports when the State could and should have made its request for a schedule modification months ago.

The Court should deny the State's motion to modify the Pretrial Scheduling Order.

## BACKGROUND

This case involves a challenge by Plaintiff Association of American Railroads ("AAR") to a Minnesota law targeting freight railroads for a multimillion-dollar special assessment to purportedly fund hazardous-materials training and response. *See* Dkt. 1 ¶¶ 42–63 ("Compl."). After AAR sued in April 2024, the State responded by filing a mirror-image counterclaim against AAR and by filing a Third-Party Complaint against BNSF Railway Company, Wisconsin Central Ltd., Cedar River Railroad Company, Soo Line Railroad Company, and Union Pacific Railroad (collectively, the "Railroads"), seeking to collect the assessment. From the start, AAR has maintained that the Minnesota

1

law is preempted on its face, and even the State acknowledged that preemption was "ripe for resolution by th[e] Court" on the papers. Dkt. 29 ¶ 55.

In December 2024, the Court denied AAR and the Railroads' motion to dismiss the Counterclaim and Third-Party Complaint, *see* Dkt. 70, and the parties commenced discovery.

On January 30, 2025, the Court issued a Pretrial Scheduling Order setting forth the deadlines for fact discovery, expert discovery, and motion practice. Dkt. 80 (the "Scheduling Order"). Consistent with Federal Rule of Civil Procedure 16 and Local Rule 16.3, the Scheduling Order provided that "[t]his schedule may be modified only upon formal motion and a showing of good cause." Dkt. 80, at 2. Under the Scheduling Order, the Court instructed that "[f]act discovery shall be <u>commenced in time to be completed</u> on or before September 1, 2025." *Id.* ¶ 1b (emphasis in original). The Scheduling Order established the following deadlines:

- Fact discovery closed on September 1, 2025, and non-dispositive motions, including those relating to fact discovery, were due by the same date. *Id.* ¶¶ 1b, 4c.

- Expert disclosures and reports were due on October 1, 2025, followed by rebuttal witnesses and reports by December 1, 2025. *Id.* ¶ 3c.

- Expert discovery, including depositions, must be completed by February 1, 2026. *Id.* at 4. Non-dispositive motions relating to expert discovery are due by the same date. *Id.* ¶¶ 3d, 4d.

- Dispositive motions are due by April 1, 2026. *Id.* ¶ 5.

In establishing those deadlines, the Scheduling Order struck a careful middle ground between the parties' competing scheduling proposals. AAR and the Railroads proposed a

2

fact discovery deadline of June 30, 2025, and the State proposed a fact discovery deadline of November 14, 2025. *See* Dkt. 77, at 8 (Parties' 26(f) Report). The Court ordered a deadline of September 1. Dkt. 80 ¶ 1b. Similarly, AAR and the Railroads proposed an expert report deadline of August 25, 2025, while the State proposed an expert report deadline of January 16, 2026. *See* Dkt. 77, at 8. The Court ordered a deadline of October 1, 2025. *See* Dkt. 80 ¶ 3c.

The parties exchanged their Initial Disclosures on February 7, 2025. Dkt. 90, Aff. of Mathew Ferche ("Ferche Aff."), ¶ 2; Decl. of Andrew W. Davis ("Davis Decl."), ¶ 2. These Initial Disclosures identified individuals likely to have discoverable information, including individuals potentially noticeable for depositions as fact witnesses. Davis Decl. ¶ 2.

The State has never alleged any deficiency with respect to the completeness or responsiveness of AAR's and the Railroads' Initial Disclosures, or indeed, any of their written discovery responses or document productions. Davis Decl. ¶ 9. The State served its written discovery requests (including 12 interrogatories and 13 requests for production for AAR, and five interrogatories and 13 requests for production for each Railroad) on AAR and the Railroads on April 16, 2025, and AAR and the Railroads promptly served written responses on June 6, 2025. Ferche Aff. ¶¶ 4, 7; Davis Decl. ¶ 3. For their part, AAR and the Railroads served written discovery requests on March 21, 2025, and the State served its responses on May 5, 2025. Ferche Aff. ¶¶ 3, 5; Davis Decl. ¶ 4.

The parties' responses to written discovery requests established the parameters for document production, and the parties have since engaged in substantial document

3

discovery. Again, the State has not claimed any deficiency regarding the completeness or responsiveness of AAR's and the Railroads' document productions. Davis Decl. ¶ 9. AAR and the Railroads have produced nearly 2,100 documents totaling over 106,000 pages, while the State has produced roughly 2,400 documents totaling over 27,000 pages. *Id.* ¶¶ 5, 7. AAR and the Railroads completed the bulk of their document production— including over 80% of total documents produced and virtually all of AAR's production— on July 28, 2025. AAR and the Railroads followed up with smaller supplemental productions on August 8, 2025, and August 21, 2025, when AAR and the Railroads produced a privilege log and a final 13 documents. Ferche Aff. ¶ 10; Davis Decl. ¶ 5. The State, meanwhile, made its initial production on June 20, 2025, and made an additional production on August 25, 2025. Ferche Aff. ¶¶ 8, 12; Davis Decl. ¶ 7. AAR and the Railroads completed their planned document production on August 21, 2025. Davis Decl. ¶ 5.

Despite AAR's and the Railroads' robust efforts to complete fact discovery by the Court's September 1 deadline, the State never noticed (or sought to notice) any depositions. It neglected to do so even though AAR and the Railroads had identified potential witnesses in their Initial Disclosures in *February* 2025. Davis Decl. ¶¶ 2, 8. In the meantime, AAR and the Railroads have been closely coordinating with their expert witness, who is diligently working to complete his initial report by the Court-ordered deadline of October 1, 2025. *Id.* ¶ 10. That report will be submitted—and the deadline will have already passed—by the scheduled October 7 hearing on the State's motion to modify the Scheduling Order.

4

Between June 30 and July 10, 2025, the parties discussed potentially modifying the discovery schedule, but did not reach an agreement. Davis Decl. ¶ 11. At a meet-and-confer on July 10, the State's counsel advised that he would discuss the issue further with his clients. *Id.* Then came silence. AAR and the Railroads received no further communication from the State regarding any potential schedule modification until August 22, 2025, more than six weeks later.

At that time, with the September 1 deadline just days away, the State's counsel asked counsel for AAR and the Railroads to consent to a four-month extension of all discovery deadlines. Davis Decl. ¶ 12. At a meet-and-confer on August 27, counsel for AAR and the Railroads advised that AAR and the Railroads had abided by the Court's Scheduling Order and would not agree to the State's proposed discovery extension. *Id.* ¶ 13.

The State then filed the present motion on Friday afternoon, August 29, 2025, hours before the Labor Day weekend, and a single business day before the September 1 fact discovery deadline. Dkt. 87. The Court has scheduled a hearing on the motion on October 7, 2025, over a month after the scheduled close of fact discovery and one week after the deadline for initial expert disclosures and reports. *See* Dkt. 88; Dkt. 80 ¶¶ 1b, 3c.

If the Court has any questions as to the discovery timeline, the parties' production, or the parties' communications, counsel for AAR and the Railroads would be happy to answer them at the October 7 hearing.

5

**ARGUMENT**

**The State Cannot Demonstrate Good Cause To Modify The Scheduling Order.**

"The Court may modify the pretrial scheduling order only for good cause, Fed. R. Civ. P. 16(b)(4)." *Johnson v. Wells Fargo Bank, N.A.*, 2012 WL 6015551, at *4 (D. Minn. Dec. 3, 2012). "Local Rule 16.3 reinforces the need for a party to show good cause when seeking to extend a pretrial deadline as the rule is intended to discourage modifying pretrial schedules." *Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, 2008 WL 11349956, at *1 (D. Minn. Nov. 7, 2008) (internal quotation marks omitted). That is an "exacting" standard, "for it demands a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, 187 F.R.D. 578, 581–82 (D. Minn. 1999) (internal quotation marks omitted). "Rule 16(b) assures that a … judge's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Id.* at 582 (cleaned up).

For three reasons, the State falls far short of that exacting standard: (1) the State has failed to show diligence; (2) it identifies no particularized need for additional discovery; and (3) modifying the Scheduling Order would severely prejudice AAR and the Railroads. The State's counterarguments lack merit, and its motion should be denied.

    **A.    The State Cannot Show Diligence.**

As the State acknowledges, "[t]he primary measure of good cause is the movant's diligence in attempting to meet the [Scheduling Order's] requirements." Dkt. 89, at 5 (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)). "To

6

establish good cause, a party *must* show its diligence." *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 434 (8th Cir. 2019) (emphasis added, quotation omitted). Courts thus reject motions to amend scheduling orders "under Rule 16(b)" when the moving party "provide[s] no reasons why" the requested discovery "could not have been [sought] earlier or why [the] motion to amend was filed so late." *Sherman*, 532 F.3d at 717 (citing *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003)).

The State has failed to demonstrate diligence. The State's efforts to show good cause "are critically undercut by one resonating reality—namely, that … [the State] has yet to commence a single deposition." *Aon*, 187 F.R.D. at 585. AAR's and the Railroads' Initial Disclosures *in February* identified the individuals likely to have discoverable information, providing candidates for potential depositions that could have been scheduled during the intervening six months. Davis Decl. ¶ 2. But the State never noticed a single deposition.

The State's delay in pursuing depositions cannot be justified. By early June, the State had received comprehensive responses from AAR and the Railroads to its written interrogatories and requests for production. By the end of July, AAR had essentially completed its production. Including documents produced by the Railroads, AAR and the Railroads collectively had at that point produced 1,768 documents, over 80% of all responsive documents. Davis Decl. ¶ 5. Yet with all the information needed to conduct depositions, the State sat on its hands. *Cf. Restoration Builders, Inc. v. Vining*, 2024 WL 5233148, at *3 (D. Minn. Dec. 27, 2024) ("Waiting months to begin reviewing discovery … does not demonstrate diligence."). Given the Scheduling Order's directive

7

that "[f]act discovery shall be <u>commenced in time to be completed</u> on or before September 1, 2025," Dkt. 80 ¶ 1b, the State's failure to notice a single deposition by the deadline cuts strongly against their belated request for an extension, *Aon*, 187 F.R.D. at 585.

Moreover, the State "provides no good cause to explain why [its] motion" to modify the scheduling order "was filed so late." *Freeman*, 349 F.3d at 589; *see Restoration Builders*, 2024 WL 5233148, at *3 (denying motion to modify scheduling order where moving party did not explain "why it did not timely request extension of the deadline"). The State filed its extension motion on Friday, August 29, just before the Labor Day weekend and one business day before the fact discovery period elapsed. Such an approach "take[s] case management orders" too "lightly"—precisely what the Eighth Circuit has cautioned against. *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001); *see Aon*, 187 F.R.D. at 582 (emphasizing that the diligence requirement enforces respect for scheduling orders, which "have become increasingly critical to the district court's case management responsibilities"). Indeed, granting the State's belated request would undermine the balance the Court struck in entering the Scheduling Order: AAR and the Railroads proposed June 30 as the fact discovery deadline, while the State proposed November 14. The deadline imposed by the Court ultimately split the difference. Granting the State's requested relief now would revive the very schedule the State sought—and the Court rejected—at the outset.

The State's belated request is especially unjustifiable because the State foresaw the need for an extension as early as June 30. *See Restoration Builders*, 2024 WL 5233148, at *3 (denying motion to modify scheduling order and emphasizing that moving party failed

8

to explain "why it was not possible to have known the information" that purportedly compelled a modification). After the parties initially discussed potential modifications between June 30 and July 10, however, the State made no mention of an extension *until six weeks later*—on August 22, just over a week before the Court-ordered September 1 fact discovery deadline. Davis Decl. ¶¶ 11, 12. The State now suggests that "it appeared that all parties recognized … that some stipulated modifications to the discovery schedule would be possible" at the July 10 meet-and-confer. Dkt. 89, at 9. But it neglects to mention that the State then dropped the ball. While the State disappeared into silence for six weeks, AAR and the Railroads were working hard to comply with the discovery deadlines the Court had ordered, respectful of its (underlined) directive that discovery must be "<u>commenced in time to be completed</u> on or before September 1, 2025." Dkt. 80 ¶ 1b. At bottom, the State's "carelessness is not compatible with a finding of diligence." *Aon*, 187 F.R.D. at 581–82.

### B. The State Cannot Demonstrate Any Particularized Need For Additional Discovery.

The State's Motion fails to establish "good cause" for another reason: It identifies neither a particularized need for more discovery nor any deficiency in AAR's responses or voluminous document productions. "A request to modify a pretrial scheduling order to include additional discovery calls for the movant to make a particularized showing of why the discovery is necessary." *Fuller v. Hafoka*, 2020 WL 4875457, at *1 (D. Minn. Aug. 19, 2020). The State does not even attempt to make such a showing, much less a "particularized" one. *Id.* (denying motion to modify scheduling order because "nowhere

9

in his numerous filings does Plaintiff explain what the relevance of these sixteen additional document requests is to his claims, nor how they will support his specific allegations"). And the State's failure to make that showing is especially acute here, given that the "preemption" issues are "purely legal defense[s] based on readily available federal law." *Sherman*, 532 F.3d at 717.

The State does not dispute that AAR's and the Railroads' responses and production have already generated a robust factual record, spanning over 100,000 pages. The State has found no fault in the scope of that production. To the contrary, the State acknowledges that AAR and the Railroads have in good faith "cooperatively and diligently engaged in discovery." Dkt. 89, at 7 & n.4. Given the immense volume of materials produced to date, the State cannot now demand modifications to the Scheduling Order just so it may seek the same discovery that it has had ample opportunity to seek all along. In short, the State has failed to make the "minimum" showing necessary to "establish good cause for an extension of discovery"—"[to] itemize the necessary discovery and explain [why] they were not able to complete that discovery in the time allotted." *Walker v. Barnett*, 484 F. Supp. 3d 683, 692 (D.S.D. 2020) (internal quotation marks omitted); *see Aon*, 187 F.R.D. at 586 (requiring "particularized showing of why the discovery is necessary" and collecting cases).

### C. The State's Requested Modifications To The Scheduling Order Would Prejudice AAR And The Railroads.

"[T]he existence of prejudice to the non-moving party" is "another reason to deny [the] motion to modify the scheduling order." *Sorin Grp. USA, Inc. v. St. Jude Med. S.C.,*

10

*Inc.*, 2016 WL 11783760, at *7 (D. Minn. Nov. 2, 2016), *report and recommendation adopted*, 2016 WL 6661147 (D. Minn. Nov. 10, 2016); *see Bradford*, 249 F.3d at 809 (holding that "prejudice" to non-moving party may "affect" Rule 16's good cause analysis). Here, an order reopening fact discovery would severely prejudice AAR and the Railroads, in at least two respects.

First, ordering additional document production, permitting new interrogatories and requests for admission, and "allowing additional depositions this late in the proceedings would unfairly prejudice" AAR and the Railroads. *Sorin Grp.*, 2016 WL 11783760, at *7. Fact discovery closed on September 1. AAR and the Railroads respected the Court's Scheduling Order and conducted discovery mindful of its specific direction that the parties needed to commence discovery promptly, and keep it moving, to meet the September 1 deadline. The State did not. It would be prejudicial—not to mention profoundly unfair—to AAR and the Railroads to reopen fact discovery and set a new deadline, penalizing the party that complied with the Court's order, while rewarding the party that did not.

Second, reopening fact discovery would be severely prejudicial because it would require AAR and the Railroads to redo and resubmit their expert report. AAR and the Railroads will file their expert report by the October 1 deadline. If this Court were to reopen fact discovery, AAR and the Railroads would be required to redraft and resubmit their expert report to account for any new information that emerged during the reopened fact discovery period, once again punishing AAR and the Railroads for having respected and complied with the Scheduling Order. This is why expert discovery typically follows fact discovery—so that experts may opine based on a closed factual record. *Cf. Fagen,*

11

*Inc. v. Exergy Dev. Grp. of Idaho, L.L.C.*, 2016 WL 2885958, at *3 (D. Minn. May 17, 2016) (denying motion to modify scheduling order because "a modification … would result in substantial prejudice to" the non-moving parties by, "for all intents and purposes, restart[ing] expert discovery"). Having to redo their expert report would impose substantial costs on AAR and the Railroads, and it would be unfair to force them to bear those costs when it was the State's lack of diligence that required the reports to be rewritten.

        **D.**       **The State's Responses Fall Flat.**

The State's excuses for its delay lack merit. The State first attempts to pin its own delay on AAR and the Railroads, asserting that "the [State] did not even receive a first set of document production from two of the third-party defendant railroad companies until August 8, 2025." Dkt. 89, at 6–7. But the production on August 8 included only a small percentage of the total documents AAR and the Railroads produced, and this production *still* came nearly a month before the close of fact discovery. Indeed, by July 28, AAR and the Railroads had collectively made 80% of their total document production (1,768 of 2,081 documents), including virtually AAR's entire production and complete productions for three of the five Railroads. Davis Decl. ¶ 5. AAR and the Railroads served written responses to the State's interrogatories and requests for production on June 6, and they identified individuals with responsive information in their Initial Disclosures in February, any of whom could have been noticed for depositions during the intervening six months. *Id.* ¶ 2. At minimum, the State does not explain why it could not have pressed ahead with depositions for at least *some* of the parties to the case (even if not the two railroads that produced documents on August 8), or why it let negotiations over a potential extension

12

languish for six weeks during a critical period in July and August. Regardless, the State's quibbles about the pace of *AAR's and the Railroads'* production is irrelevant, because "the analysis under Rule 16(b)(4) of the Federal Rules of Civil Procedure focuses almost exclusively on *the moving party's* diligence." *Fair Isaac Corp. v. Fed. Ins. Co.*, 2022 WL 1537957, at *3 (D. Minn. May 16, 2022) (emphasis added).

The State's remaining arguments are makeweight. The State asserts that recent "legislative amendments to section 299A.55 may also add additional complexity," Dkt. 89, at 7, but the State never explains why those minor amendments—which merely increased the proportion of the multi-million dollar assessment railroads must pay—would warrant extending fact discovery or what such discovery would entail. And those amendments were enacted in June, giving the State ample time to seek additional discovery if it wished to do so. The State sought no such discovery.

Next, the State notes that "discovery parameters governing document production were not fully established until the protective order was issued on March 6," which, in the State's view, effectively truncated the period for fact discovery by a month. Dkt. 87, at 7. But the State knew in March that it had six months to complete fact discovery. The Scheduling Order directed the parties to commence fact discovery early enough to complete it by September 1. If the State believed it had already lost too much time, it could have sought an extension in March. The Court's entry of a protective order less than five weeks after it issued the Scheduling Order thus offers no basis for excusing the State's dallying in discovery or its belated filing of its motion to modify the Court's carefully calibrated Scheduling Order.

13

Finally, the State faults AAR and the Railroads for not agreeing to use the Court's voluntary informal resolution process to resolve this pretrial scheduling dispute. *See* Dkt. 89, at 10. But the importance of this dispute—including the potential for a significant extension of the fact discovery period and the need to redo the expert reports—warrants resolution under the Court's formal process. And the informal resolution process explicitly contemplates the parties "giving up rights they would otherwise have," Dkt. 80 ¶ 4f, such as the right to briefing, a record, and an appeal. In light of the gravity of what the State is seeking, AAR and the Railroads' preference for the formal process is reasonable.

## CONCLUSION

The Court should deny the State's Motion to Modify Pretrial Scheduling Order.

Dated:  September 5, 2025

*/s/ Eric E. Holman*
Eric E. Holman, #327918
DONNA LAW FIRM, P.C.
7601 France Avenue South, Suite 350
Minneapolis, MN 55435
Telephone: (952) 562-2460
eholman@donnalaw.com

*Attorneys for Third-Party Defendants Wisconsin Central Ltd. and Cedar River Railroad Company*

*/s/ Andrew W. Davis*
Andrew W. Davis (#0386634)
Jackson Kennedy (#0504319)
STINSON LLP
50 South Sixth Street Suite 2600
Minneapolis, MN 55402
Telephone: 612.335.1500
andrew.davis@stinson.com
jackson.kennedy@stinson.com

*Attorneys for Plaintiff Association of American Railroads and Third-Party Defendants BNSF Railway Company, Soo Line Railroad Company, and Union Pacific Railroad.*

14

Thomas H. Dupree Jr.
(*pro hac vice*)
Jeffrey Liu
(*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, DC 20036-4504
Telephone: 202.955.8500
TDupree@gibsondunn.com
JYLiu@gibsondunn.com

*Attorneys for Plaintiff*
*Association of American Railroads and*
*Third-Party Defendants BNSF Railway*
*Company, Wisconsin Central Ltd.,*
*Cedar River Railroad Company, Soo*
*Line Railroad Company, and Union*
*Pacific Railroad.*